UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PROGRESS SOFTWARE CORPORATION,

Plaintiff,

v.

HOSPITALS OF ONTARIO PENSION PLAN,

Defendant.

**05    10028 REK**

CIVIL ACTION
No.

RECEIPT # _61262_
AMOUNT $ _150.00_
SUMMONS ISSUED _1_
LOCAL RULE 4.1 _‒_
WAIVER FORM _‒_
MCF ISSUED _‒_
BY DPTY. CLK. _M.P._
DATE _1/6/05_

COMPLAINT
AND
DEMAND FOR TRIAL BY JURY

Plaintiff, Progress Software Corporation, as and for its Complaint against defendant,

Hospitals of Ontario Pension Plan, states as follows:

**MAGISTRATE JUDGE** _JLA_

### Parties

1.      Plaintiff, Progress Software Corporation ("Progress"), is a corporation organized

under the laws of the Commonwealth of Massachusetts and having its principal place of business

at 14 Oak Park, Bedford, Massachusetts 01730.

2.      On information and belief, defendant, Hospitals of Ontario Pension Plan

("HOOPP"), is a contributory defined benefit multi-employer pension plan organized under the

laws of Canada and the Province of Ontario and registered with the Financial Services

Commission of Ontario and with the Canada Customs and Revenue Agency and having its

principal place of business at 1 Toronto Street, Suite 1400, Toronto, Ontario M5C 3B2, Canada.

### Jurisdiction and Venue

3.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332, in that the

matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is

1148627

between a citizen of the Commonwealth of Massachusetts and a citizen or subject of a foreign state.

4.      Venue is appropriate in this district pursuant to 28 U.S.C. §§ 1391(a)(2) and 1391(d), in that a substantial part of the events or omissions giving rise to Progress's claims occurred in, and a substantial part of the property that is the subject of this action is situated in, this district, and in that HOOPP is an alien.

Facts

5.      eXcelon Corporation ("eXcelon") is a corporation organized under the law of the State of Delaware and having its principal place of business at 14 Oak Park, Bedford, Massachusetts 01730. Prior to about January 31, 2000, the name of eXcelon was "Object Design, Inc."

6.      Since prior to the year 2000 eXcelon was the owner of a certain computer software program referred to as "PSE Pro." PSE Pro is an object-oriented data management software program for transaction-intensive embedded and single-user applications written in the C++ and Java programming languages.

7.      On or about December 19, 2002, eXcelon became a wholly owned subsidiary of Progress. eXcelon has assigned to Progress all its right, title, and interest, both legal and equitable, including without limitation all contract rights and copyrights, in and to PSE Pro.

8.      On or about January 28, 2000, HOOPP and eXcelon entered into an agreement (the "January Agreement") whereby (a) eXcelon granted to HOOPP one unlimited end user license for PSE Pro operating on a single CPU, the terms and conditions of which license were set forth in a document titled "Object Design PSE Pro License Terms And Conditions" (the "PSE Pro License Terms And Conditions"), with a copy of PSE Pro available to be downloaded

by HOOPP from a specified website and a copy to be shipped to HOOPP on CD-ROM disks,

and (b) HOOPP agreed to pay to eXcelon the sum of three thousand eight hundred fifty dollars

($3,850), plus one hundred ninety-five dollars ($195) for one year of basic support and upgrades

and twenty-five dollars ($25) for shipping. The terms of the January Agreement were set forth in

a document titled "Order Supplement" dated January 28, 2000 (the "January Order Supplement")

and forwarded by eXcelon to HOOPP on or about January 28, 2000. The January Order

Supplement incorporated by reference the PSE Pro License Terms And Conditions, a copy of

which is attached hereto as Exhibit A.

     9.     Prior to installation of the copy of PSE Pro downloaded from the website

specified by eXcelon or of the copy of PSE Pro shipped to HOOPP on CD-ROM disks, HOOPP

was presented with a window setting forth the PSE Pro License Terms And Conditions, which

commence with a paragraph directing the reader to carefully read the terms and conditions

therein, stating that Object Design, *i.e.*, eXcelon, was only willing to provide the program and

documentation upon those terms and conditions, and stating that any use of the program or

documentation would confirm the user's agreement to be bound by those terms and conditions.

HOOPP confirmed its agreement that in using PSE Pro it was bound by the PSE Pro License

Terms And Conditions by clicking on the location indicated in the window, and it was thereupon

permitted to install the program.

     10.    The package containing the copy of PSE Pro shipped to HOOPP on CD-ROM

disks also included a paper copy of the PSE Pro License Terms And Conditions, differing from

the electronic copy only in minor ways reflecting the different method of distribution of the

software. The paper copy, a copy of which is attached hereto as Exhibit B, commenced with a

paragraph directing the reader to carefully read the terms and conditions therein, stating that

1148627             - 3 -

Object Design was only willing to provide the program and documentation upon those terms and conditions, and stating that any use of the program or documentation would confirm the user's agreement to be bound by those terms and conditions. HOOPP again confirmed its agreement that in using PSE Pro it was bound by the PSE Pro License Terms And Conditions by installing and using the copy of PSE Pro enclosed with the paper copy of the PSE Pro License Terms And Conditions.

11.    On or about February 17, 2000, HOOPP and eXcelon entered into an agreement (the "February Agreement") whereby (a) eXcelon granted to HOOPP one development license for PSE Pro operating on a single CPU, the terms and conditions of which license were set forth in the PSE Pro License Terms And Conditions, with a copy of the development version of PSE Pro available to be downloaded by HOOPP from a specified website and a copy to be shipped to HOOPP on CD-ROM disks, and (b) HOOPP paid to eXcelon the sum of two hundred forty-five dollars ($245), plus twenty-five dollars ($25) for shipping. The terms of the February Agreement were set forth in a document titled "Order Supplement" dated February 17, 2000 (the "February Order Supplement") and forwarded by eXcelon to HOOPP. The February Order Supplement incorporated by reference the PSE Pro License Terms And Conditions.

12.    On or about June 20, 2000, HOOPP and eXcelon entered into an agreement (the "June Agreement") whereby (a) eXcelon granted to HOOPP five development licenses for PSE Pro operating on a single CPU, the terms and conditions of which license were set forth in the PSE Pro License Terms And Conditions, with a copy of the development version of PSE Pro available to be downloaded by HOOPP from a specified website and copies to be shipped to HOOPP on CD-ROM disks, and (b) HOOPP paid to eXcelon the sum of one thousand one hundred dollars ($1,100), plus nine hundred seventy-five dollars ($975) for one year of

maintenance and support and twenty-five dollars ($25) for shipping. The terms of that agreement (the "June Agreement") were set forth in a document titled "Order Supplement" dated June 20, 2000 (the "June Order Supplement") and forwarded by eXcelon to HOOPP. The June Order Supplement incorporated by reference the PSE Pro License Terms And Conditions.

13.     Any copy of the development version of PSE Pro provided by eXcelon to HOOPP pursuant to the February Agreement or the June Agreement could be installed only after HOOPP confirmed, in the manner described in the foregoing paragraph 9, its agreement that in using PSE Pro it was bound by the PSE Pro License Terms And Conditions.

14.     Any copy of the development version of PSE Pro provided by eXcelon to HOOPP pursuant to the February Agreement or the June Agreement by means of CD-ROM disks was also accompanied, as described in the foregoing paragraph 10, by a paper copy of the PSE Pro License Terms And Conditions providing that HOOPP's use of the program would confirm its agreement to be bound by the terms and conditions set forth therein.

15.     At the times eXcelon entered into the January Agreement, the February Agreement, and the June Agreement, eXcelon's principal place of business was in Burlington, Massachusetts. The January Order Supplement, February Order Supplement, and June Order Supplement were forwarded to HOOPP from Burlington, Massachusetts, all copies of PSE Pro shipped to HOOPP on CD-ROM disks were shipped to HOOPP from Burlington, Massachusetts, and all copies of PSE Pro downloaded by HOOPP were downloaded by it from a server located in Burlington, Massachusetts.

16.     Except for the single end user license and six development licenses acquired by HOOPP pursuant to the January Agreement, the February Agreement, and the June Agreement, HOOPP has no other licenses for PSE Pro.

17.    As set forth in Section 2 of the PSE Pro License Terms And Conditions, HOOPP was licensed to operate PSE Pro only on the equipment specified in the document referred to therein as the "Order Doc," and if no equipment was specified in the Order Doc then on a single CPU. The Order Doc for the end user license granted to HOOPP pursuant to the January Agreement is the January Order Supplement, the Order Doc for the development license granted to HOOPP pursuant to the February Agreement is the February Order Supplement, and the Order Doc for the development licenses granted to HOOPP pursuant to the June Agreement is the June Order Supplement. Neither the January Order Supplement, the February Order Supplement, nor the June Order Supplement specifies the equipment on which PSE Pro is to be operated. Accordingly, HOOPP's licenses to operate PSE Pro were restricted to its operation on a single CPU.

18.    As set forth in Section 2 of the PSE Pro License Terms And Conditions, after it had acquired an end user license and a development license to PSE Pro, HOOPP was licensed to use PSE Pro for the purpose of developing applications and to operate and distribute such applications, along with the portion of PSE Pro accessible by operation of those applications and not usable to develop applications, for its own internal business purposes. HOOPP was licensed to make such use, operation, and distribution only on the equipment specified in the Order Doc or, if no equipment was so specified, on the single CPU on which HOOPP was licensed to operate PSE Pro.

19.    Because no equipment was specified in the Order Doc, HOOPP was licensed to use PSE Pro for the purpose of developing applications and to operate and distribute such applications, along with the portion of PSE Pro accessible by operation of such applications and not usable to develop applications, only on a single CPU, for its own internal business purposes.

20.    On information and belief, HOOPP used PSE Pro to develop one or more applications.

21.    On information and belief, HOOPP copied, transferred, and distributed one or more applications developed using PSE Pro, and all of PSE Pro or the portion of PSE Pro accessible by operation of such applications, to approximately 350 health care and related organizations in Ontario, Canada that employed one or more persons who participated in the pension plan operated by HOOPP.

22.    On information and belief, HOOPP caused each of the approximately 350 health care and related organizations to which HOOPP distributed PSE Pro and applications developed using it to install, operate, and use, on one or more computers, those applications and all of PSE Pro or the portion of PSE Pro accessible by operation of such applications.

23.    None of the approximately 350 health care and related organizations to which HOOPP distributed PSE Pro and applications developed using it operated or used those programs for HOOPP's own internal business purposes.

24.    HOOPP operated and used PSE Pro beyond the scope of its licenses by, among other things, copying, transferring, and distributing one or more applications developed using PSE Pro, and all of PSE Pro or the portion of PSE Pro accessible by operation of such applications, to approximately 350 health care and related organizations, by causing each of those organizations to install, operate, and use, on one or more computers, those applications and all of PSE Pro or the portion of PSE Pro accessible by operation of such applications, and by causing each of those organizations to install, operate, and use those applications and all of PSE Pro or the portion of PSE Pro accessible by operation of such applications for purposes other than HOOPP's own internal business purposes.

25.     On information and belief, none of the approximately 350 health care and related organizations to which HOOPP distributed PSE Pro and applications developed using it had any license for PSE Pro.

26.     Neither eXcelon nor Progress learned of HOOPP's copying, transfer, and distribution of PSE Pro and applications developed using it to approximately 350 health care and related organizations until in or about May 2003.

27.     On November 8, 2004, pursuant to Section 4 of the PSE Pro License Terms And Conditions, Progress gave HOOPP written notice, by telecopier and by registered mail, specifying HOOPP's failure and default in the performance of its obligations under the PSE Pro License Terms And Conditions and notifying HOOPP that if it failed to cure such failure and default to the satisfaction of Progress within ten days of its receipt of the notice, its license to PSE Pro would terminate as of the eleventh day after HOOPP's receipt of the notice.

28.     HOOPP failed to cure the failure and default specified in Progress's written notice to HOOPP pursuant to Section 4 of the PSE Pro License Terms And Conditions within ten days of its receipt of that notice.

29.     All of HOOPP's licenses to PSE Pro terminated as of the end of November 18, 2004.

30.     On information and belief, HOOPP has continued to operate and use PSE Pro after the termination of its licenses to PSE Pro.

31.     Pursuant to Section 4 of the PSE Pro License Terms And Conditions, HOOPP was required, within five days after termination of its licenses to PSE Pro, to return to Progress or destroy all copies of PSE Pro and have an appropriate authorized representative certify in writing the return or destruction of all such copies.

32.     HOOPP has failed to return to Progress or, on information and belief, to destroy all copies of PSE Pro, and HOOPP has failed to have an appropriate authorized representative certify in writing the return or destruction of all such copies.

33.     All conditions precedent to the bringing of this action have been performed, have been waived, or have occurred.

<u>Claims for Relief</u>

**<u>Count One</u>**
(Breach of Contract)

34.     Progress repeats and realleges the allegations set forth in the foregoing paragraphs 1 through 33 with the same force and effect as if fully realleged and restated herein.

35.     By reason of HOOPP's conduct set forth in the foregoing paragraphs, including, without limitation, (a) operating and using PSE Pro beyond the scope of its licenses, by copying, transferring, and distributing to approximately 350 health care and related organizations one or more applications developed using PSE Pro and all of PSE Pro or the portion of PSE Pro accessible by operation of such applications, and by causing each of those organizations to install, operate, and use, on one or more computers, those applications and all of PSE Pro or the portion of PSE Pro accessible by operation of such applications for purposes other than HOOPP's own internal business purposes, (b) failing and refusing to cease to operate and use PSE Pro after the termination of its licenses, and (c) failing and refusing to return to Progress or destroy all copies of PSE Pro, HOOPP materially breached the PSE Pro License Terms And Conditions, the January Agreement, the February Agreement, and the June Agreement.

36.     Despite written demand by Progress, HOOPP has failed and refused to cure its breaches of the PSE Pro License Terms And Conditions, the January Agreement, the February Agreement, and the June Agreement.

37.    As a direct and proximate result of HOOPP's breaches of the PSE Pro License

Terms And Conditions, the January Agreement, the February Agreement, and the June

Agreement, Progress has suffered great damage.

38.    HOOPP is liable to Progress for the damages suffered by Progress as a result of

HOOPP's breaches of the PSE Pro License Terms And Conditions, the January Agreement, the

February Agreement, and the June Agreement.

### Count Two
(Breach of Implied Covenant of Good Faith and Fair Dealing)

39.    Progress repeats and realleges the allegations set forth in the foregoing paragraphs

1 through 33 and 35 through 38 with the same force and effect as if fully realleged and restated

herein.

40.    As a matter of law, each of the PSE Pro License Terms And Conditions, the

January Agreement, the February Agreement, and the June Agreement contains and incorporates

an implied covenant of good faith and fair dealing.

41.    By reason of HOOPP's conduct as set forth in the foregoing paragraphs,

including, without limitation, (a) operating and using PSE Pro beyond the scope of its licenses,

by copying, transferring, and distributing to approximately 350 health care and related

organizations one or more applications developed using PSE Pro and all of PSE Pro or the

portion of PSE Pro accessible by operation of such applications, and by causing each of those

organizations to install, operate, and use, on one or more computers, those applications and all of

PSE Pro or the portion of PSE Pro accessible by operation of such applications for purposes

other than HOOPP's own internal business purposes, (b) failing and refusing to cease to operate

and use PSE Pro after the termination of its licenses, and (c) failing and refusing to return to

Progress or destroy all copies of PSE Pro, HOOPP materially breached the implied covenant of

good faith and fair dealing contained in the PSE Pro License Terms And Conditions, the January Agreement, the February Agreement, and the June Agreement.

42.    As a direct and proximate result of HOOPP's breaches of the implied covenant of good faith and fair dealing, Progress has suffered great damage.

43.    HOOPP is liable to Progress for the damages suffered by Progress as a result of HOOPP's breaches of the implied covenant of good faith and fair dealing.

**Count Three**
(Unjust Enrichment)

44.    Progress repeats and realleges the allegations set forth in the foregoing paragraphs 1 through 33, 35 through 38, and 40 through 43 with the same force and effect as if fully realleged and restated herein.

45.    By reason of HOOPP's conduct set forth in the foregoing paragraphs, including, without limitation, (a) operating and using PSE Pro beyond the scope of its licenses, by copying, transferring, and distributing to approximately 350 health care and related organizations one or more applications developed using PSE Pro and all of PSE Pro or the portion of PSE Pro accessible by operation of such applications, and by causing each of those organizations to install, operate, and use, on one or more computers, those applications and all of PSE Pro or the portion of PSE Pro accessible by operation of such applications for purposes other than HOOPP's own internal business purposes, (b) failing and refusing to cease to operate and use PSE Pro after the termination of its licenses, and (c) failing and refusing to return to Progress or destroy all copies of PSE Pro, HOOPP knowingly and intentionally obtained benefits from eXcelon and Progress for which HOOPP should reasonably have expected to pay but for which it has failed and refused to pay.

46.    By reason of its conduct set forth in the foregoing paragraphs, HOOPP has been unjustly benefited and enriched at the expense of Progress.

47.    By reason of HOOPP's unjust enrichment as set forth in the foregoing paragraphs, restitution by HOOPP to Progress is necessary to protect Progress's interests and prevent unjust enrichment.

48.    By reason of HOOPP's unjust enrichment as set forth in the foregoing paragraphs, HOOPP is required to make restitution to Progress.

WHEREFORE, Progress prays that the Court:

A. enter judgment in favor of Progress and against HOOPP for damages in such amount as may be proved at trial, plus interest;

B. grant Progress its costs and attorneys' fees; and

C. grant Progress such other and further relief as the Court may deem just and proper.

<u>JURY DEMAND</u>

Plaintiff demands a trial by jury of all issues triable of right by a jury.

PROGRESS SOFTWARE CORPORATION

By its attorneys,

Dated: January 6, 2005

Marc K. Temin (BBO #494280)
Marco J. Quina
Foley, Hoag LLP
155 Seaport Boulevard
Boston, MA 02210-2600
(617)832-1000

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Progress Software Corporation

## DEFENDANTS
Hospitals of Ontario Pension Plan

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **Middlesex**

(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT **Outside U.S.**

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Marc Temin (BBO #494280)
Foley Hoag LLP
155 Seaport Boulevard, Boston, MA 02210-2600
(617) 832-1000

ATTORNEYS (IF KNOWN)
Merrian M. Panarella, Esq.
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street, Boston, MA 02109
(617) 526-6936

**10028 REK**

## II. BASIS OF JURISDICTION (PLACE AND 'x' IN ONE BOX ONLY)

☐ 1 U.S. GOVERNMENT Plaintiff

☐ 2 U.S. GOVERNMENT Defendant

☐ 3 FEDERAL QUESTION (US Government Not a Party)

☒ 4 DIVERSITY (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN 'X' IN ONE BOX FOR
(For Diversity Cases Only)                    PLAINTIFF AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation (Incorporated in) | ☐ 6 | ☒ 6 |

## IV. ORIGIN (PLACE AN 'X' IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN 'X' IN ONE BOX ONLY.)

### CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholder Suits
☒ 190 Other Contract
☐ 195 Contract Product Liability

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### TORTS
#### PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

#### PERSONAL INJURY
☐ 362 Personal Injury - Medical Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

#### PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights

### PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence
#### HABEAS CORPUS:
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

### FORFEITURE/PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety Health
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### SOCIAL SECURITY
☐ 861 HIA (1395 ff)
☐ 862 Black Lung (923)
☐ 863 D/WC DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS — Third Party 26 USC 7609

### OTHER STATUTES
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commercial/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

28 U.S.C. § 1332.  Defendant breached license agreements for plaintiff's computer software.

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ **in excess of $75,000**

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY
(See Instructions):
JUDGE _____ DOCKET NUMBER _____

DATE **January 6, 2005**

SIGNATURE OF ATTORNEY OF RECORD
*Marc E. Temin*

### FOR OFFICE USE ONLY
RECEIPT# _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) <u>Progress Software Corporation v. Hospitals of Ontario</u>

    <u>Pension Plan</u>

2.  CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE
    CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

    ☐  I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    ☐  II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,        *Also complete AO 120 or 121
             740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950           for patent, trademark or copyright cases

    ☒  III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
             380, 385, 450, 891.                                                     **05 · 10028 REK**

    ☐  IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
             690, 810, 861-865, 870, 871, 875, 900.

    ☐  V.    150, 152, 153.

3.  TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(E)).


4.  HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS
    COURT?                                                                          YES ☐        NO ☒

5.  DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING
    THE PUBLIC INTEREST?   (SEE 28 USC 2403)                                        YES ☐        NO ☒
    IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?      YES ☐        NO ☐

6.  IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO
    TITLE 28 USC 2284?                                                              YES ☐        NO ☒

7.  DO ALL PARTIES IN THIS ACTION RESIDE IN THE CENTRAL SECTION OF THE DISTRICT OF MASSACHUSETTS
    (WORCESTER COUNTY) - (SEE LOCAL RULE 40.1(C))                                   YES ☐        NO ☒
    OR IN THE WESTERN SECTION (BERKSHIRE, FRANKLIN, HAMPDEN OR HAMPSHIRE COUNTIES)?
    (SEE LOCAL RULE 40.1(D))                                                        YES ☐        NO ☒

8.  DO ALL OF THE PARTIES RESIDING IN MASSACHUSETTS RESIDE IN THE CENTRAL AND/OR WESTERN SECTIONS OF
    THE DISTRICT?                                                                   YES ☐        NO ☒
    (a)    IF YES, IN WHICH SECTION DOES THE PLAINTIFF RESIDE? _____

9.  IN WHICH SECTION DO THE ONLY PARTIES RESIDING IN MASSACHUSETTS RESIDE? <u>Middlesex County</u>

10. IF ANY OF THE PARTIES ARE THE UNITED STATES, COMMONWEALTH OF MASSACHUSETTS, OR ANY
    GOVERNMENTAL AGENCY OF THE U.S.A. OR THE COMMONWEALTH, DO ALL OTHER PARTIES RESIDE IN THE

    CENTRAL SECTION;    YES ☐    NO ☐        OR WESTERN SECTION;    YES ☐    NO ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME <u>Marc Temin, Esq.</u>

ADDRESS <u>Foley Hoag LLP, 155 Seaport Boulevard, Boston, MA 02210-2600</u>

TELEPHONE NO <u>(617) 832-1000</u>

(Categfrm.rev-3/97)  1995557

OBJECT DESIGN PSE PRO LICENSE TERMS AND CONDITIONS  (Download Version 98.1)

YOU SHOULD CAREFULLY READ THE FOLLOWING TERMS AND
CONDITIONS BEFORE USING THIS COMPUTER PROGRAM AND
DOCUMENTATION.  OBJECT DESIGN, INC. IS ONLY
WILLING TO PROVIDE THIS COMPUTER PROGRAM AND THE
ACCOMPANYING DOCUMENTATION TO YOU UPON THESE TERMS
AND CONDITIONS.  ANY USE OF THIS COMPUTER PROGRAM
AND DOCUMENTATION WILL CONFIRM YOUR AGREEMENT TO
BE BOUND BY THESE TERMS AND CONDITIONS.  IF YOU DO
NOT WISH TO BE BOUND TO THESE TERMS AND
CONDITIONS, DO NOT INSTALL OR USE THE COMPUTER
PROGRAM OR DOCUMENTATION AND YOUR MONEY WILL BE
REFUNDED.

1.  DEFINITIONS

| | |
|---|---|
| Object Design: | Object Design, Inc., 25 Mall Road, Burlington, Massachusetts 01803. |
| Software: | The Object Design ObjectStore PSE Pro computer programs in machine readable object code form. |
| Documentation: | The instructional and operational user documentation for the Software. |
| Product: | An unaltered version of the Software and Documentation with all functions intact, including all Product updates and new versions you receive from Object Design. |
| Runtime Product: | The portions of the Product that (i) are accessible by operation of the Application(s), and (ii) do not include any features of the Product which permit the development of Applications. |
| Application: | An application program developed by you using the Product in accordance with this Agreement, that is not in whole or in part a functional equivalent of the Product. |
| Order Doc: | An ordering document, online purchase page or PSE Pro |

Royalty Agreement provided by Object Design or its distributor(s), that is signed or otherwise accepted by you.

## 2.  GRANT OF LICENSE:

Object Design grants to you a non-exclusive, non-transferable license (the "License") to operate the Product linked hereto (downloaded electronically) and identified in the Order Doc, on the equipment specified in the Order Doc. If no equipment is specified in the Order Doc, this License is restricted to a single CPU. You may use the Product, (i) for the purpose of developing Applications and (ii) to operate and distribute for your own internal business purposes, the Runtime Product in connection with operation of the Applications on the client, server and/or standalone equipment specified in the Order Doc. Furthermore, you may use the Product to reproduce, distribute and sublicense the Runtime Product to your customers (iii) free-of-charge for demonstration and evaluation purposes only, as part of and embedded in a free-of-charge Application only, (iv) up to the limited quantity of Runtime Product (end-user) licenses paid for by you and specified in the Order Doc, as part of and embedded in an Application on the client, server and/or standalone equipment specified in the Order Doc, or (v) for the applicable royalty fees specified in the Order Doc and paid by you, for the corresponding quantity of Runtime Products part of and embedded in a royalty bearing Application on the client, server and/or standalone equipment specified in the Order Doc. Prior to or upon delivery of an Application to your customer pursuant to subsection (iii), (iv) or (v) herein, you shall enter into a binding license agreement with your customer that shall substantially conform to the applicable terms and conditions of this Agreement, including, but not limited to, protecting Object Design's proprietary rights in the Product and limiting Object Design's liability as contained herein. Notwithstanding the above, if you pay for a Runtime Product (end-user) license only (as specified in the Order Doc), then your license grant is limited to Section 2(ii) only (see immediately above).

## 3.  OWNERSHIP OF THE PRODUCT; RESTRICTIONS ON USE:

Object Design (or its licensors) owns and will retain all copyright, trademark, trade secret and other proprietary rights in and to the Product. Your rights are limited to the License and the terms of this Agreement.

(a) You shall NOT make any copies of all or any part of the Product, except that you may copy the Software as necessary to use it as permitted by Section 2 and for archival purposes.

(b) You shall NOT decompile, disassemble, reverse engineer or otherwise reduce the Software code to a human readable form.

(c) You shall NOT remove from any part of the Product any notice of proprietary rights or any disclaimer.

(d) Unless otherwise specified in this Agreement, you shall NOT sell, license, sub-license, rent or otherwise transfer the Product or

License without the written permission of Object Design, except that you may transfer the Product and License to a person who first notifies Object Design in writing that said person agrees to all the terms and conditions of this Agreement and you deliver all your copies of the Product to said person.

(e) You shall NOT modify the Product, merge it with other software or documentation or create derivative works based in whole or in part, except for development of Applications in accordance with this Agreement. You shall NOT create any Application that is, in whole or in part, a functional equivalent of the Product.

(f) You shall NOT disclose or permit others to have access to the Product or any results of benchmark tests unless Object Design consents to such disclosure in writing.

4.  TERM:

The term of this Agreement and the License will continue until you return all copies of the Product to Object Design or this Agreement is terminated.  Object Design may terminate this Agreement by written notice to you specifying your failure or default in the performance of any provisions of this Agreement and you fail to cure said failure or default to the satisfaction of Object Design within ten days after such notice.  Within five (5) days after termination of this Agreement, you will return all copies of the Product to Object Design or destroy all copies of the Product, and have an appropriate authorized representative certify in writing the return or destruction of all copies of the Product.

5.  LICENSEE'S RESPONSIBILITIES FOR SELECTION AND USE:

You are responsible for the supervision, management and control of the use of the Product, and output of the Product, including, but not limited to: (1) selection of the Product to achieve your intended results; (2) determining the appropriate uses of the Product in your business; (3) establishing adequate independent procedures for testing the accuracy of the Product and Application; and (4) establishing adequate backup to prevent the loss of data in the event of a Product or Application malfunction.

6.  LIMITED WARRANTY; EXCEPTIONS AND DISCLAIMERS:

Limited Warranty.  Subject to the other provisions in this Agreement, Object Design warrants that the Product will substantially conform to the Documentation for a period of ninety (90) days after delivery to you.  Object Design's sole responsibility under this warranty will be, at its option, (1) to use reasonable efforts to correct the Product nonconformance or (2) to refund the license fee paid for the Product upon its return.  Object Design does not warrant that the Product will be error free, nor that all Product errors will be corrected.

Exceptions.  Object Design's warranty does not apply insofar as: (1) any Product is subjected to misuse, neglect, accident or exposure to environmental conditions beyond those specified by Object Design; (2) claims result from acts or omissions caused by persons other than

Object Design or from products, material or software not provided by Object Design; (3) claims are not reported to Object Design within the warranty period or not documented by you; or (4) you use a version of the Product that does not include all updates available from Object Design.

Limitations on Warranties.

THE EXPRESS WARRANTY SET FORTH IN THIS SECTION 6 IS THE ONLY WARRANTY GIVEN BY OBJECT DESIGN WITH RESPECT TO THE PRODUCT OR ANY MATERIALS OR SERVICES FURNISHED HEREUNDER; OBJECT DESIGN MAKES NO OTHER WARRANTIES, EXPRESS, IMPLIED OR ARISING BY CUSTOM OR TRADE USAGE, AND SPECIFICALLY DISCLAIMS THE WARRANTIES OF NON-INFRINGEMENT, MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE. ORAL OR WRITTEN INFORMATION OR ADVICE GIVEN BY OBJECT DESIGN OR ITS AUTHORIZED REPRESENTATIVES SHALL NOT CHANGE THE SCOPE OF THIS WARRANTY. OBJECT DESIGN SHALL NOT BE RESPONSIBLE FOR THE PERFORMANCE OF APPLICATIONS OR OUTPUT OBTAINED FROM THE SOFTWARE NOR FOR ANY LIABILITY TO ANY PARTY ARISING OUT OF USE OF THE PRODUCT OR APPLICATIONS. YOU SHALL NOT BE ENTITLED TO BRING ANY CLAIM, ACTION OR PROCEEDING ARISING OUT OF THE WARRANTY SET FORTH IN THIS SECTION 6 MORE THAN ONE YEAR AFTER THE DATE ON WHICH THE BREACH OF WARRANTY OCCURRED.

7.  LIMITATIONS OF LIABILITY AND REMEDIES:

THE LIABILITY OF OBJECT DESIGN AND ITS LICENSORS IN CONTRACT, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE ARISING OUT OF OR IN CONNECTION WITH THE PRODUCT OR ANY MATERIALS OR SERVICES FURNISHED HEREUNDER SHALL NOT EXCEED THE LICENSE FEE YOU PAID FOR THE PRODUCT. IN NO EVENT SHALL OBJECT DESIGN OR ITS LICENSORS BE LIABLE FOR SPECIAL, INDIRECT, INCIDENTAL, TORT (INCLUDING NEGLIGENCE) OR CONSEQUENTIAL DAMAGES (INCLUDING ANY DAMAGES RESULTING FROM LOSS OF USE, LOSS OF DATA, LOSS OF PROFITS OR LOSS OF BUSINESS) ARISING OUT OF OR IN CONNECTION WITH THE USE OF OR INABILITY TO USE THE PRODUCT OR ANY MATERIALS OR SERVICES FURNISHED HEREUNDER OR FROM OBJECT DESIGN'S PERFORMANCE OF SERVICES, EVEN IF OBJECT DESIGN OR ITS LICENSORS HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

8.  TECHNICAL SUPPORT AND SERVICES:

Technical support that you order and pay for will be provided in accordance with Object Design's then-current Technical Software Support Policy at applicable fees. Any ideas, know-how, techniques and software which may be developed by Object Design in connection with technical support or consulting services, including any enhancements

or modifications made to the Products, shall be the sole property of Object Design and subject to this Agreement.

## 9. U.S. GOVERNMENT RESTRICTED RIGHTS:

If you are an agency or contractor of the United States Government , you acknowledge and agree that (i) the Product was developed entirely at private expense, (ii) the Product in all respects is proprietary data belonging solely to Object Design, Inc. or its licensors, (iii) the Product is not in the public domain, and (iv) the Product is "Commercial Computer Software" as defined in sub-paragraph (a)(1) of DFAR Section 252.227-7014.

## 10. GENERAL PROVISIONS:

This Agreement, including the Order Doc, represents the entire agreement between you and Object Design with respect to the Product and subject matter hereof, and supersedes all prior proposals, representations and agreements, whether written or oral, with respect thereto. This Agreement may be amended or modified only by a written agreement executed by you and Object Design. You may not export or re-export the Product without the appropriate United States and foreign government licenses. The terms of this Agreement shall be construed in accordance with the substantive laws of The Commonwealth of Massachusetts, USA without regard to its principles of conflict of law or the U.N. Convention on Contracts for the International Sale of Goods.

OBJECT DESIGN PSE PRO LICENSE TERMS AND CONDITIONS
(CD Version 98.1)

YOU SHOULD CAREFULLY READ THE FOLLOWING TERMS AND CONDITIONS
BEFORE USING THE ENCLOSED COMPUTER PROGRAM AND DOCUMENTATION.
OBJECT DESIGN, INC. IS ONLY WILLING TO PROVIDE THIS COMPUTER
PROGRAM AND THE ACCOMPANYING DOCUMENTATION TO YOU UPON THESE
TERMS AND CONDITIONS.  ANY USE OF THIS COMPUTER PROGRAM AND
DOCUMENTATION WILL CONFIRM YOUR AGREEMENT TO BE BOUND BY
THESE TERMS AND CONDITIONS.  IF YOU DO NOT WISH TO BE BOUND
TO THESE TERMS AND CONDITIONS, DO NOT INSTALL OR USE THE
COMPUTER PROGRAM OR DOCUMENTATION; INSTEAD RETURN THIS
PACKAGE AND THE ENCLOSED MATERIALS WITHIN 10 DAYS OF RECEIPT
AND YOUR MONEY WILL BE REFUNDED.

1.  DEFINITIONS

Object Design:
        Object Design, Inc.,
        25 Mall Road,
        Burlington,
        Massachusetts 01803

Software:
        The Object Design ObjectStore PSE Pro computer
        programs in machine readable object code form.

Documentation:
        The instructional and operational user documentation
        for the Software.

Product:
        An unaltered version of the Software and
        Documentation with all functions intact, including
        all Product updates and new versions you receive
        from Object Design.

Runtime Product:
        The portions of the Product that (i) are accessible
        by operation of the Application(s), and (ii) do not
        include any features of the Product which permit the
        development of Applications.

Application:
        An application program developed by you using the
        Product in accordance with this Agreement, that is
        not in whole or in part a functional equivalent of
        the Product.

Order Doc:
        An ordering document, online purchase page or PSE
        Pro Royalty Agreement provided by Object Design or
        its distributor(s), that is signed or otherwise
        accepted by you.

2.  GRANT OF LICENSE: Object Design grants to you a

non-exclusive, non-transferable license (the "License") to
operate the Product included in this package and identified
in an Order Doc, on the equipment specified in the Order Doc.
If no equipment is specified in the Order Doc, this License
is restricted to a single CPU. You may use the Product, (i)
for the purpose of developing Applications and (ii) to
operate and distribute for your own internal business
purposes, the Runtime Product in connection with operation of
the Applications on the client, server and/or standalone
equipment specified in the Order Doc. Furthermore, you may
use the Product to reproduce, distribute and sublicense the
Runtime Product to your customers (iii) free-of-charge for
demonstration and evaluation purposes only, as part of and
embedded in a free-of-charge Application only, (iv) up to the
limited quantity of Runtime Product (end-user) licenses paid
for by you and specified in the Order Doc, as part of and
embedded in an Application on the client, server and/or
standalone equipment specified in the Order Doc, or (v) for
the applicable royalty fees specified in the Order Doc and
paid by you, for the corresponding quantity of Runtime
Products part of and embedded in a royalty bearing
Application on the client, server and/or standalone equipment
specified in the Order Doc. Prior to or upon delivery of an
Application to your customer pursuant to subsection (iii),
(iv) or (v) herein, you shall enter into a binding license
agreement with your customer that shall substantially conform
to the applicable terms and conditions of this Agreement,
including, but not limited to, protecting Object Design's
proprietary rights in the Product and limiting Object
Design's liability as contained herein.  Notwithstanding the
above, if you pay for a Runtime Product (end-user) license
only (as specified in the Order Doc), then your license grant
is limited to Section 2(ii) only (see immediately above).

3.  OWNERSHIP OF THE PRODUCT; RESTRICTIONS ON USE: Object
Design (or its licensors) owns and will retain all copyright,
trademark, trade secret and other proprietary rights in and
to the Product.  Your rights are limited to the License and
the terms of this Agreement.

(a) You shall NOT make any copies of all or any part of the
Product, except that you may copy the Software as necessary
to use it as permitted by Section 2 and for archival
purposes.

(b) You shall NOT decompile, disassemble, reverse engineer or
otherwise reduce the Software code to a human readable form.

(c) You shall NOT remove from any part of the Product any
notice of proprietary rights or any disclaimer.

(d) Unless otherwise specified in this Agreement, you shall
NOT sell, license, sub-license, rent or otherwise transfer
the Product or License without the written permission of
Object Design, except that you may transfer the Product and
License to a person who first notifies Object Design in

writing that said person agrees to all the terms and conditions of this Agreement and you deliver all your copies of the Product to said person.

(e) You shall NOT modify the Product, merge it with other software or documentation or create derivative works based in whole or in part, except for development of Applications in accordance with this Agreement. You shall NOT create any Application that is, in whole or in part, a functional equivalent of the Product.

(f) You shall NOT disclose or permit others to have access to the Product or any results of benchmark tests unless Object Design consents to such disclosure in writing.

4.  TERM: The term of this Agreement and the License will continue until you return all copies of the Product to Object Design or this Agreement is terminated.  Object Design may terminate this Agreement by written notice to you specifying your failure or default in the performance of any provisions of this Agreement and you fail to cure said failure or default to the satisfaction of Object Design within ten days after such notice.  Within five (5) days after termination of this Agreement, you will return all copies of the Product to Object Design or destroy all copies of the Product, and have an appropriate authorized representative certify in writing the return or destruction of all copies of the Product.

5.  LICENSEE'S RESPONSIBILITIES FOR SELECTION AND USE: You are responsible for the supervision, management and control of the use of the Product, and output of the Product, including, but not limited to: (1) selection of the Product to achieve your intended results; (2) determining the appropriate uses of the Product in your business; (3) establishing adequate independent procedures for testing the accuracy of the Product and Application; and (4) establishing adequate backup to prevent the loss of data in the event of a Product or Application malfunction.

6.  LIMITED WARRANTY; EXCEPTIONS AND DISCLAIMERS: Limited Warranty.  Subject to the other provisions in this Agreement, Object Design warrants that the Product will substantially conform to the Documentation for a period of ninety (90) days after delivery to you.  Object Design's sole responsibility under this warranty will be, at its option, (1) to use reasonable efforts to correct the Product nonconformance or (2) to refund the license fee paid for the Product upon its return.  Object Design does not warrant that the Product will be error free, nor that all Product errors will be corrected. warranty period or not documented by you; or (4) you use a version of the Product that does not include all updates available from Object Design.

Exceptions.  Object Design's warranty does not apply insofar as: (1) any Product is subjected to misuse, neglect, accident or exposure to environmental conditions beyond those

specified by Object Design; (2) claims result from acts or omissions caused by persons other than Object Design or from products, material or software not provided by Object Design; (3) claims are not reported to Object Design within the warranty period or not documented by you; or (4) you use a version of the Product that does not include all updates available from Object Design.

Limitations on Warranties. THE EXPRESS WARRANTY SET FORTH IN THIS SECTION 6 IS THE ONLY WARRANTY GIVEN BY OBJECT DESIGN WITH RESPECT TO THE PRODUCT OR ANY MATERIALS OR SERVICES FURNISHED HEREUNDER; OBJECT DESIGN MAKES NO OTHER WARRANTIES, EXPRESS, IMPLIED OR ARISING BY CUSTOM OR TRADE USAGE, AND SPECIFICALLY DISCLAIMS THE WARRANTIES OF NON-INFRINGEMENT, MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE. ORAL OR WRITTEN INFORMATION OR ADVICE GIVEN BY OBJECT DESIGN OR ITS AUTHORIZED REPRESENTATIVES SHALL NOT CHANGE THE SCOPE OF THIS WARRANTY. OBJECT DESIGN SHALL NOT BE RESPONSIBLE FOR THE PERFORMANCE OF APPLICATIONS OR OUTPUT OBTAINED FROM THE SOFTWARE NOR FOR ANY LIABILITY TO ANY PARTY ARISING OUT OF USE OF THE PRODUCT OR APPLICATIONS. YOU SHALL NOT BE ENTITLED TO BRING ANY CLAIM, ACTION OR PROCEEDING ARISING OUT OF THE WARRANTY SET FORTH IN THIS SECTION 6 MORE THAN ONE YEAR AFTER THE DATE ON WHICH THE BREACH OF WARRANTY OCCURRED.

7. LIMITATIONS OF LIABILITY AND REMEDIES: THE LIABILITY OF OBJECT DESIGN AND ITS LICENSORS IN CONTRACT, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE ARISING OUT OF OR IN CONNECTION WITH THE PRODUCT OR ANY MATERIALS OR SERVICES FURNISHED HEREUNDER SHALL NOT EXCEED THE LICENSE FEE YOU PAID FOR THE PRODUCT. IN NO EVENT SHALL OBJECT DESIGN OR ITS LICENSORS BE LIABLE FOR SPECIAL, INDIRECT, INCIDENTAL, TORT (INCLUDING NEGLIGENCE) OR CONSEQUENTIAL DAMAGES (INCLUDING ANY DAMAGES RESULTING FROM LOSS OF USE, LOSS OF DATA, LOSS OF PROFITS OR LOSS OF BUSINESS) ARISING OUT OF OR IN CONNECTION WITH THE USE OF OR INABILITY TO USE THE PRODUCT OR ANY MATERIALS OR SERVICES FURNISHED HEREUNDER OR FROM OBJECT DESIGN'S PERFORMANCE OF SERVICES, EVEN IF OBJECT DESIGN OR ITS LICENSORS HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

8. TECHNICAL SUPPORT AND SERVICES: Technical support that you order and pay for will be provided in accordance with Object Design's then-current Technical Software Support Policy at applicable fees. Any ideas, know-how, techniques and software which may be developed by Object Design in connection with technical support or consulting services, including any enhancements or modifications made to the Products, shall be the sole property of Object Design and subject to this Agreement.

9. U.S. GOVERNMENT RESTRICTED RIGHTS: If you are an agency or contractor of the United States Government, you acknowledge and agree that (i) the Product was developed entirely at private expense, (ii) the Product in all respects is proprietary data belonging solely to Object Design,

Inc. or its licensors, (iii) the Product is not in the public domain, and (iv) the Product is "Commercial Computer Software" as defined in sub-paragraph (a)(1) of DFAR Section 252.227-7014.

10.  GENERAL PROVISIONS: This Agreement, including the Order Doc, represents the entire agreement between you and Object Design with respect to the Product and subject matter hereof, and supersedes all prior proposals, representations and agreements, whether written or oral, with respect thereto. This Agreement may be amended or modified only by a written agreement executed by you and Object Design.  You may not export or re-export the Product without the appropriate United States and foreign government licenses.  The terms of this Agreement shall be construed in accordance with the substantive laws of The Commonwealth of Massachusetts, USA without regard to its principles of conflict of law or the U.N. Convention on Contracts for the International Sale of Goods.

Install of WinCECPP.v25